IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BOBBY EZELL, R65015, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 24-cv-2300-DWD |
| JAMES A. SAROKA, BRYCE W. HICKS, JOHN DOES 1-4, | ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Bobby Ezell, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights during a transport from Pinckneyville to Stateville. The Court dismissed Plaintiff's original complaint as insufficient to state a claim, and he filed a timely amended complaint. (Doc. 10). Plaintiff's allegations center on the use of handcuffs during a prison transport.

Plaintiff's Amended Complaint (Doc. 10) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture,

the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

On April 10, 2024, Plaintiff was awaiting a prison transfer when Defendant Hicks asked the inmates if anyone had medical permits. (Doc. 10 at 13). Plaintiff gave Hicks and "John Doe" his medical waist chain permit, and Hicks took it to show Defendant Saroka. Plaintiff claims Saroka aggressively stated he would not honor the permit and that Plaintiff would have to accept handcuffs or face segregation. Saroka, Hicks, and "all four C/O John Does" then applied handcuffs "very tightly smashing plaintiff wrists with the handcuffs all the way around both wrists all the way through the wrist wraps, tongues, breaking the skin to the bone." (Doc. 10 at 13). Plaintiff indicated he was going to file a grievance about the incident, to which Saroka responded that he was going to make Plaintiff suffer for filing a lawsuit against his friend (Sgt. Neibel—a non-party to this lawsuit). Saroka then began to bend and contort Plaintiff's wrists in an effort to break them. (Doc. 10 at 13).

Plaintiff alleges "all the defendants" refused to loosen the handcuffs or to provide him with medical attention. (Doc. 10 at 13-14). Plaintiff characterizes Saroka's actions as excessive force. He claims the handcuffs broke through his wrist wraps, splints, tongues and braces, and cut deeply into his skin. He alleges the acts were cruel and unusual and were in no way necessary to restore order or discipline. He further claims he suffered bruising, and pain in his wrists, arms, neck and spine. He claims the injuries required medical treatment and that he has a "pending" surgery. He further alleges both hands

are still impaired, and are still bruised, swollen, and in protective splints or braces. He further claims Saroka has been around him since 2018, and thus knew of his preexisting medical infirmities.

Plaintiff faults Defendant Hicks for failing to intervene because Hicks allegedly held Plaintiff's arms together for Saroka to apply the handcuffs. He further claims Defendants Saroka, Hicks, and John Does 1-4 were deliberately indifferent to his health and safety because they applied a single set of handcuffs secured in front of his body for transport. (Doc. 10 at 14). He claims they refused to acknowledge the implications of their actions by refusing him medical attention, and that Saroka and Hicks compounded this problem at the transfer point en route to Stateville. Plaintiff further alleges he continues to suffer emotional distress, depress, and flashbacks from the incident, and he fears future incidents.

In a separate paragraph, Plaintiff claims the Defendants "invidiously discriminated" against him based upon his race. (Doc. 10 at 16). He claims that once he told them he was going to write the incident up, then they began to retaliate to cause excruciating pain. (*Id.*).

In support of the Complaint, Plaintiff submitted two of his own declarations, and two declarations from fellow inmates who allege they witnessed the encounter. (Doc. 10 at 23-26). In his own declaration, Plaintiff claims he first had an issue with Saroka in 2018 when Saroka was a correctional officer whom he alleges stole "writeouts" from his pocket and subsequently lied about the encounter. (Doc. 10 at 24). He claims since then Saroka has intercepted or threatened to intercept his grievances. (Doc. 10 at 24). He also alleges

in a declaration that he told Saroka he had a waist chain permit because of problems with his C7 spine, neck, shoulder, arm, and fingers, and due to nerve damage. (Doc. 10 at 11). He claims that Saroka lied in subsequent grievance documentation about the handcuffing issue. He claims Saroka also knew about a prior excessive force incident with a tactical team and his friend Sgt. Neibel (a non-party), which caused injuries for which Plaintiff attended physical therapy three times per week. (Doc. 10 at 12).

In addition to declarations, Plaintiff resubmitted a grievance about the incident, and a random assortment of medical records that reflect encounters concerning his wrists both before and after the alleged handcuffing incident.

Based on the allegations in the Amended Complaint, the Court will designate the following claim:

> **Claim 1:** **Eighth Amendment excessive force/failure to intervene or deliberate indifference claim against Defendants Saroka, Hicks, and John Does 1-4 for their use of restraints for transport on April 10, 2024;**
>
> **Claim 2:** **First Amendment retaliation claim against Defendant Saroka for his conduct on April 10, 2024;**

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## **Preliminary Dismissals**

Plaintiff asserts in a single paragraph separate from the rest of his factual narrative that the defendants invidiously discriminated against him based on his race or ethnicity and did so as retaliation only after he told them he was going to report the incident. Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race. *See e.g., Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019). To state such a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race … ethnicity, sex, religion, or other proscribed factor[.]" *Id.* at 719–20 (*citing Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v. Lane*, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting discrimination must be intentional, purposeful, or have a discriminatory motive). "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Illinois State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). "To prove discriminatory effect, the plaintiffs are required to show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the unprotected class." *Id.*

Here, Plaintiff's bald assertion that the Defendants invidiously discriminated is not enough to maintain an Equal Protection claim. He does not allege that their actions were motivated by a discriminatory purpose. Instead, he directly alleges their actions were motivated by a desire to retaliate after he indicated he would complain about the

handcuffing incident. Thus, Plaintiff's discrimination allegations are dismissed as insufficiently pled.

To the extent that Plaintiff also intended for this paragraph to present a retaliation claim against all six Defendants, the Court also finds any such assertion to be insufficient because the vague assertion that "one or more defendants" harmed me is inadequate to state a claim under § 1983. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Plaintiff has more specific retaliation allegations against Defendant Saroka that will be discussed in the analysis section, but the generic assertion against all defendants is insufficient.

## Analysis

As the Court explained in the review of Plaintiff's original complaint, Plaintiff's allegations against Defendants are more complex than they may seem at first glance because his allegations lie right at the intersection of excessive force or cruel and unusual punishment and deliberate indifference to a serious medical need. *See e.g., Verser v. Smith*, 2017 WL 528381 (N.D. Ill. Feb. 9, 2017) (analyzing an Eighth Amendment claim by an inmate with a medical double-cuffing permit alleging officers ignored his permit during an inmate-transport causing him serious pain under the combined standards of deliberate indifference and excessive force). An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim is not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). While the Court will

also consider the extent of the injury suffered in the use of force, there is no severity of injury benchmark to state an excessive force claim. *Id.* An Eighth Amendment deliberate indifference claim requires a showing that an official knew of a plaintiff's serious medical condition, but intentionally or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008).

Plaintiff's original allegations were ambiguous about the nature of his underlying injuries and the Defendants' knowledge of the same. He was also ambiguous about if, when, and with how much detail he described any immediate injuries to the defendants. In the Amended Complaint, Plaintiff asserts that a John Doe, Defendant Hicks and Defendant Saroka all examined his medical permit and he verbalized to Saroka that he needed to be cuffed in a certain manner due to injuries to his neck, arm, fingers, and spine. He also alleged that Saroka had preexisting knowledge of his injuries because Saroka had worked in close proximity to his living area and had interacted with him on multiple occasions from 2018 through the date of the handcuffing incident. He also claimed Saroka was verbally hostile when confronted with the permit, he refused to honor it, he presented Plaintiff with a choice of conventional handcuffs or segregation, and he indicated he was going to make Plaintiff suffer for a lawsuit he filed against Saroka's friend.

Furthermore, he alleges Hicks held his arms while Saroka applied a single set of handcuffs tightly. He alleges Saroka then bent or twisted the handcuffs with a desire to break his wrists. Plaintiff claims that Saroka's use of the handcuffs cut through the tape and wrist "tongues" or splints, causing deep gashes in his skin near his bones. He faults

Saroka for excessive force or cruel and unusual punishment, and faults Hicks for failing to intervene. He also alleges, as he did in his original complaint, that Hicks, Saroka and all four John Doe officers held his arms and applied the handcuffs tightly. He claims he informed all defendants that he was injured, bleeding, and bruised, but everyone disregarded his medical condition and refused care.

At this preliminary juncture, Plaintiff's allegations are sufficient to proceed. Plaintiff may proceed against the Defendants on the theory that their actions either constituted excessive force or amounted to deliberate indifference to his documented wrist problems. He may also proceed on a theory that they exhibited deliberate indifference to any injuries he may have sustained as a result of the April 10, 2024, handcuffing incident.

Plaintiff may also proceed on Claim 2 against Defendant Saroka on the premise that Saroka's actions amounted to retaliation. Plaintiff alleges he told Saroka he had a permit and showed the permit, but Saroka refused to honor it, citing a desire to cause him physical pain based on a lawsuit he previously filed against Saroka's friend. The temporal causal link between any prior encounters with Saroka or with Saroka's friend is strained given that Plaintiff alleges these prior events occurred from 2018 to 2021, and this handcuffing incident occurred in 2024, but this is offset by Plaintiff's assertion that Saroka explicitly verbalized a desire to retaliate. At this very early juncture of the case, Plaintiff's allegations are sufficient to proceed against Saroka on a theory of retaliation.

Because there are four John Doe defendants, the Court will add the Warden of Pinckneyville to this lawsuit in his official capacity to assist with the identification of the

Does.  To that end, Plaintiff must **<u>file a notice with the Court within 21 days</u>** providing descriptive information about the Does such as: physical description (height, hair color, build, etc.), dates of interaction, job title, or any other characteristic that might help to identify John Does 1-4.  Once the counsel appears on behalf of the Warden, the Court will then set a deadline for the Warden to respond to Plaintiff's information.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendants Hicks and Saroka and John Does 1-4 and **Claim 2** survives as to Defendant Saroka.  The Clerk of Court is **DIRECTED** to also **ADD** the Warden of Pinckneyville in official capacity, because the Warden is the proper party to assist with John Doe identification.

The Clerk of Court is **DIRECTED** to prepare for Defendants Saroka, Hicks, and the Warden of Pinckneyville (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 10), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.  However, the Warden need not file an answer because he or she has been added solely because Plaintiff seeks eventual injunctive relief.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 7 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**Plaintiff shall have 21 days to file a notice** with the Court describing John Does 1-4. Failure to do so may result in the dismissal of these defendants for failure to prosecute.

**IT IS SO ORDERED.**

Dated: December 27, 2024

/s *David W. Dugan*

DAVID W. DUGAN
United States District Judge

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.