IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BOBBY EZELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-cv-2300-RJD |
| | ) | |
| JAMES A. SAROKA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:[1]**

This matter comes before the Court on Defendants' Motion for Summary Judgment on the

Issue of Exhaustion (Doc. 63).[2] For the reasons explained below, the motion is **GRANTED in**

**part and DENIED in part**.

**Background**

Plaintiff Bobby Ezell is an inmate with the Illinois Department of Corrections ("IDOC")

who is currently housed at Pinckneyville Correctional Center ("Pinckneyville"). Prior to

Pinckneyville, Plaintiff was housed at Stateville Correctional Center ("Stateville"). *Id.* Plaintiff

filed an Amended Complaint alleging his constitutional rights were violated during transport from

Pinckneyville to Stateville Correctional Center. (Doc. 11 at 1). Following threshold review of the

Amended Complaint, Plaintiff was allowed to proceed on the following claims:

---

[1] This case has been assigned to the undersigned to conduct all proceedings through the parties' consent
pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 55).
[2] The Clerk of Court is **DIRECTED** to update the docket sheet to reflect Defendant Nicholas Schulte's full
and correct name as follows: Nicholas Schutte (*See* Docs. 45 & 56).

Page **1** of **12**

Claim 1:      Eighth Amendment excessive force/failure to intervene or deliberate indifference claim against Defendants James A. Saroka, Bryce W. Hicks, Hunter Farmer, Bruce Sisney, Nicholas Schutte, and Zachary Westfall for their use of restraints for transport on April 10, 2024;

Claim 2:      First Amendment retaliation claim against Defendant Saroka for his conduct on April 10, 2024.

(Doc. 11).[3]

Specifically, Plaintiff alleged that on April 10, 2024, he was awaiting transport to Stateville. (Doc. 11 at 2). Upon request, Plaintiff gave Defendants Hicks and "John Doe" his medical waist chain permit. (*Id.*). Defendant Hicks showed the permit to Saroka, who stated that he would not honor the permit and that Plaintiff would have to be handcuffed or face segregation. (*Id.*). Defendants Saroka, Hicks, Farmer, Sisney, Schutte, and Westfall then applied handcuffs "very tightly smashing plaintiff['s] wrists with the handcuffs all the way around both wrists all the way through the wrist wraps, tongues, breaking the skin to the bone." (*Id.*). Plaintiff indicated he was going to file a grievance about the incident, to which Saroka responded that he was going to make Plaintiff suffer for filing a lawsuit against his friend (Sgt. Neibel—a non-party to this lawsuit). Saroka then began bending and contorting Plaintiff's wrists to break them. (*Id.*).

Plaintiff further alleged that "all the defendants" refused to loosen the handcuffs or to provide him with medical attention. (Doc. 11, p. 2). Plaintiff characterized Saroka's actions as excessive force and claimed that he suffered bruising and pain in his wrists, arms, neck, and spine, and that surgery for his injuries was pending. (*Id.* at 3).

Plaintiff faulted Defendant Hicks for failing to intervene because he allegedly held

---

[3] Defendants Farmer, Sisney, Schutte, and Westfall were substituted for Defendants John Does 1-4. (Doc. 38).

Plaintiff's arms together for Saroka to apply the handcuffs. He further claimed that all Defendants were deliberately indifferent to his health and safety because they applied a single set of handcuffs secured in front of his body for transport. (Doc. 11, p. 3). He claimed they refused to acknowledge the implications of their actions by refusing him medical attention, and that Saroka and Hicks compounded this problem at the transfer point en route to Stateville.

At the threshold review, Judge Dugan noted that Plaintiff's allegations against Defendants as to Claim 1 are complex because they "lie right at the intersection of excessive force or cruel and unusual punishment and deliberate indifference to a serious medical need." (Doc. 11, p. 6). Judge Dugan concluded that Plaintiff could proceed against the Defendants on the following theories: (a) that their actions constituted excessive force, (b) that their actions amounted to deliberate indifference to Plaintiff's documented wrist problems, or (c) that Defendants exhibited deliberate indifference to any injuries he sustained as a result of the April 10, 2024, handcuffing incident. (Doc. 11, p. 8).

As to Claim 2 against Defendant Saroka for retaliation, Plaintiff alleged that Saroka refused to honor Plaintiff's medical permit on April 10, 2024, citing a desire to cause him physical pain based on a lawsuit he previously filed against Saroka's friend. Plaintiff alleged that the prior events occurred from 2018 to 2021. Judge Dugan noted that despite the temporal gap between the prior incidents and the alleged retaliation on April 10, 2024, Plaintiff had sufficiently asserted a claim for retaliation due to Saroka's explicit verbalization of a desire to retaliate against Plaintiff for those past incidents.

Defendants moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies before initiating this action. (Doc. 63). Plaintiff opposed the motion. (Doc.

67). The Court originally set this matter for an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). However, after more careful review of the record, the Court found that a hearing was not necessary.

**<u>Analysis</u>**

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to and draws all reasonable inferences in favor of the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding

a prisoner's efforts to exhaust. *Pavey*, 544 F.3d at 742.[4] A hearing, however, is not necessary when material facts are not in dispute. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only legal questions").

***Exhaustion Requirement***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies before filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the IDOC must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem to his or her institutional counselor unless certain discrete issues are being grieved. 20 Ill. Admin. Code § 504.810(a). "The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* § 504.810(c). An inmate who does not know the names of individuals involved in the complaint must include as much descriptive information about the individual as possible. *Id.*

---

[4] This case does not implicate *Perttu v. Richards*, 605 U.S. 460, 145 S. Ct. 1793, 222 L. Ed. 2d 108 (2025) because Plaintiff has not argued that his attempts to exhaust his administrative remedies were hindered by Defendants' unconstitutional conduct as alleged in the Amended Complaint.

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the CAO — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.* An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a final decision. *Id.* §_504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). "The appeal must be received by the [ARB] within 30 days after the date of the decision." *Id.* The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal. 20 Ill. Admin. Code § 504.850(d) and (e).

Further, the Seventh Circuit has explained that to satisfy its purpose and comply with the PLRA requirements, the grievance must contain sufficient information to allow prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002). A grievance that does not raise the same claim as the lawsuit and does not provide sufficient information from which to infer that the defendants are the targets does not comply with the PLRA requirements. *Brown v. Briggs*, No. 22-1963, 2023 WL 3674669, at *2 (7th Cir. May 26, 2023). Such a disconnect between a grievance and the complaint deprives the federal courts of jurisdiction to hear the claims. *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021); *see also Shipp v. Lobenstein*, No. 23-1923, 2023 WL 8868501, at *2 (7th Cir. Dec. 22, 2023) ("To exhaust remedies, a prisoner must follow the prison's administrative rules, . . . including the level of detail required by them[.]"). However, failing to name the defendants in a grievance is "a mere technical defect" where the

inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

## Discussion

Defendants' motion contains a Statement of Material Facts that details Plaintiff's relevant grievance history. (Doc. 63, pp. 4-6). Based on the record, the parties do not dispute that Plaintiff filed only two relevant grievances. (Doc. 63, ¶¶ 9-10; Doc. 67, ¶¶ 9-10). Both are dated April 10, 2024, and were directly sent to the ARB on April 16, 2024, and June 7, 2024, respectively. Defendants did not dispute that the ARB reviewed and denied the latest grievance (Grievance #590524-1618) on its merits. They argue, however, that even though the ARB reviewed it on its merits, Grievance #590524-1618 was substantively insufficient to exhaust Plaintiff's claims.

Because the parties do not dispute that there are only two relevant grievances, there is no need to discuss Plaintiff's entire grievance history. Further, the Court's review of the two relevant grievances shows that the first grievance is fully incorporated into Grievance #590524-1618. Accordingly, the Court only needs to address the substantive sufficiency of Grievance #590524-1618.

**Grievance #590524-1618**

On June 7, 2024, the ARB received Grievance #590524-1618, dated April 10, 2024. (Doc. 63, ¶ 10; Doc. 67, p. 3). Plaintiff grieved that on April 10, 2024, he was waiting to be transferred to Stateville-NRC. At that time, he "showed staff" his waist chain permit and was told to show it to the bus driver. (Doc. 63-4, pp. 158-59). Plaintiff showed the permit to Hicks and Saroka, who told him that medical waist chains were not allowed on transfer. (*Id.*). Thereafter, Hicks left to prepare the transportation bus. At that time, Ezell again showed Saroka his permit, to which Saroka

responded: "You are not going in medical waist chains on my bus, so I do not care if you file a grievance later on me," and that he would be in handcuffs or "going to segregation for failure to cuff up and refusing transfer." (*Id.*). Ezell grieved that, thereafter, he was "cuffed tightly in retaliation," resulting in both of his wrists being hurt, damaged, swollen, and bruised. (*Id.*). Ezell stated that he explained his prior nerve damage and pain in his spine, neck, shoulder, arm, and fingertips to Saroka again, to no avail.

In the grievance, Plaintiff requested that he be provided with all "C/O John Does' names" that were present in 6-A-wing on April 10, 2024, between 6:00 a.m. and 9:00 a.m., that all staff involved be fired without pay, and that Ezell receive monetary compensation for his physical and emotional injuries. He further requested an investigation and that the video footage of the incident be preserved. The ARB reviewed Grievance #590524-1618 on the merits and denied it, finding that the issue had been appropriately handled by the facility and the staff misconduct was not substantiated. (Doc. 63-4, p. 157).

**Claim 1**

In Claim 1, Plaintiff first argues that all Defendants were deliberately indifferent to his wrist issues by failing to honor the waist chain permit. Plaintiff clearly described the claim in Grievance #590524-1618 regarding Defendants Saroka and Hicks, stating that he showed them the permit, but they responded that waist chains were not allowed during transfer. Defendants argue that Plaintiff's "theory of deliberate indifference due to Defendant [Saroka]'s preexisting knowledge of Plaintiff's prior injuries was not properly exhausted" because "Plaintiff did not allege any such facts." However, this specific allegation is not an essential element of Plaintiff's deliberate indifference claim. Plaintiff was not required to plead his entire case in the grievance.

Plaintiff stated in Grievance #590524-1618 that he advised Saroka of his medical waist chain permit and his prior nerve injuries, but Saroka did not honor the permit. This is sufficient to alert the institution of Plaintiff's deliberate indifference claim against Saroka.

Defendants also argue that the grievance is substantively insufficient as to Plaintiff's claims against Saroka because it does not specifically allege that he "bent and contorted Plaintiff's wrists in an effort to break them." *Id.* The Court agrees that Grievance #590524-1618 does not contain any factual allegations regarding Saroka's bending and contorting of Plaintiff's wrists after Plaintiff had already been handcuffed, as alleged in the Amended Complaint. This is a distinct claim of deliberate indifference or use of excessive force against Saroka, which Plaintiff failed to exhaust before initiating this action. Accordingly, Plaintiff may not proceed with that claim.

As to the Defendants Farmer, Sisney, Shutte, and Westfall, who were originally identified as John Does 1-4, Defendants argue that Grievance #590524-1618 was insufficient to exhaust Plaintiff's deliberate indifference or excessive force claims because it did not state "what, if any, Defendants' involvement was beyond knowing that Plaintiff had a waist chain permit." However, Plaintiff specifically referenced in the grievance that he showed his medical permit to "staff John Doe[s]" who directed him to show it to the bus drivers. Further, Plaintiff's use of passive voice ("Ezell was cuffed up" tightly "under duress" at which time his wrists again got injured) combined with his requested relief (punishment of all John Does who participated in the grieved conduct— with specific reference to the location and timeframe in which the misconduct occurred) suggests that the John Does Defendants either actively participated in his handcuffing or were at least present during Plaintiff's handcuffing and failed to intervene. The Grievance Officer's description of Plaintiff's requested relief in its response to Grievance #590524-1618 (to punish C/O John Does

Page **9** of **12**

1-4, C/O Hicks, and Saroka for their failure to honor the wrist permits) supports that reading. (Doc. 63-4, p. 158). Accordingly, the Court finds that Grievance #590524-1618 contained sufficient factual details to apprise the institution of Plaintiff's deliberate indifference, excessive force, or failure to intervene claims against those Defendants for not honoring Plaintiff's medical permit and for their use of restraints on April 10, 2024.

The Court clarifies, however, that Plaintiff has not exhausted any potential claim against Hicks for his direct involvement in the handcuffing. Unlike in the Amended Complaint, where Plaintiff faulted Defendant Hicks for failing to intervene because he allegedly held Plaintiff's arms together for Saroka to apply the handcuffs, Grievance #590524-1618 contains no such reference. Rather, Plaintiff explicitly stated therein that Hicks had already left to prepare the transportation bus before the forceful handcuffing. There is nothing to indicate Hicks' presence during that incident.

Plaintiff also asserts in Claim 1 that Defendants exhibited deliberate indifference to any injuries he sustained as a result of the April 10, 2024, handcuffing ("they refused to acknowledge the implications of their actions by refusing him medical attention, and that Saroka and Hicks compounded this problem at the transfer point en route to Stateville"). However, unlike Plaintiff's Amended Complaint, Grievance #590524-1618 does not contain any similar allegations to apprise the institution of the Defendants' alleged failure to attend to Plaintiff's medical needs following the handcuffing. As Defendants correctly point out, Plaintiff did not allege in his grievance that Defendants "were aware that the handcuffs were inappropriately smashing Plaintiff's wrists, causing lacerations all the way to the bone, and that they failed to remove or loosen the cuffs upon request." Accordingly, Plaintiff has not exhausted that part of Claim 1.

**Claim 2**

As to Claim 2, Defendants argue that Plaintiff did not allege in his grievances that Saroka had any knowledge of other lawsuits Plaintiff had filed against his "friends," indicating that Defendant Saroka's actions were not retaliatory. *Id.* The Court agrees. Plaintiff stated in the grievance that Ezell "was cuffed tightly in retaliation." (Doc. 63-4, p. 161). But the grievance does not make any reference to prior lawsuits Plaintiff had filed against Saroka's friends. Rather, Plaintiff's reference to retaliation appears to be connected to his immediately prior insistence that his medical permit be honored. There is nothing in the grievance to apprise the facility of a connection between Saroka's retaliatory conduct and Plaintiff's prior lawsuits against Saroka's friend. Accordingly, Grievance #590524-1618 did not exhaust Plaintiff's retaliation claim.

## Conclusion

For these reasons, Defendants' Motion for Summary Judgment on the Issue of Exhaustion (Doc. 63) is **GRANTED in part and DENIED in part**. The following claims are **DISMISSED without prejudice**: Plaintiff's claims that Defendants exhibited deliberate indifference to any injuries he sustained as a result of the April 10, 2024, handcuffing incident (Claim 1); Plaintiff's claim against Defendant Hicks for failure to intervene during the forceful handcuffing (Claim 1); Plaintiff's use of excessive force or deliberate indifference claim for Defendant Saroka's bending and contorting of Plaintiff's wrists to break them after Plaintiff had already been handcuffed (Claim 1); and Plaintiff's First Amendment retaliation claim against Defendant Saroka for his conduct on April 10, 2024 (Claim 2). Plaintiff will proceed against Defendants Saroka and Hicks for the use of excessive force or deliberate indifference when they denied Plaintiff's medical waist chain permit on April 10, 2024 (Claim 1) and for the use of excessive force or deliberate

indifference or failure to intervene against Defendants Saroka, Farmer, Sisney, Schutte, and Westfall for their use of restraints for transport on April 10, 2024 (Claim 1).

**IT IS SO ORDERED.**

**DATED: May 12, 2026**

_____
**Hon. Reona J. Daly**
**United States Magistrate Judge**

Page **12** of **12**